**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA   ) | |
| ) | |
| v.                                                        ) | Case No: 1:20-mj-84(TCB) |
| ) | |
| JOHN CAMERON DENTON            ) | |
| ) | |
|     **Defendant.**                    ) | |

## MOTION TO REVOKE DETENTION ORDER

COMES NOW the Defendant, John Cameron Denton ("Mr. Denton"), by counsel, and pursuant to 18 U.S.C. § 3145(b), and moves this Honorable Court to revoke the order of detention imposed by Magistrate Judge Theresa C. Buchanan on March 13, 2020. Mr. Denton also requests an expedited hearing of this matter pursuant to 18 U.S.C. § 3145(b), which requires that such motions be determined "promptly."

## BACKGROUND

Mr. Denton is charged with one count of conspiracy to transmit threats to injure the person of another, in violation of 18 U.S.C. § 875(c) and 371. On February 26, 2020, Mr. Denton was arrested in the Southern District of Texas (Houston). Upon his transport to this district, Mr. Denton made his initial appearance on March 10, 2020. At the detention hearing on March 13, 2020, the defense requested release with the conditions included in the Pre-Trial Services release recommendation. These conditions included 24-hour home confinement with electronic monitoring, a third-party custodian, and no access to electronic devices with internet capabilities. Prior to the hearing, Pre-Trial Services interviewed Mr. Frank Denton, Mr. Denton's grandfather who resides in Conroe, Texas, and Elizabeth Ellis, Mr. Denton's friend who resides in Baltimore, Maryland.  Pre-Trial Services informed counsel that neither would be considered suitable third-

party custodians until firearms were removed from their residences which was accomplished prior to the hearing. Counsel provided Pre-Trial Services with an affidavit from Mr. Frank Denton that affirmed his commitment and availability to serve as a third-party. Counsel also provided Pre-Trial Services with an affidavit from Mr. Denton's employer that affirmed his familiarity with the allegations contained in the affidavit in support of the criminal complaint, that Mr. Denton could maintain his employment if released, and that he would ensure Mr. Denton abide by any conditions of release while working.

Notwithstanding that Pre-Trial Services recommended release with conditions, the Court denied Mr. Denton's request for release, finding clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. The Court noted that the weight of the evidence against Mr. Denton is strong, he is subject to a lengthy period of incarceration if convicted, and he lacks significant community or family ties to this district. The Court also noted that it is generally disinclined to grant release to a third-party outside of this district. However, the Bail Reform Act favors Mr. Denton's release because the conditions suggested by Pre-Trial Services will reasonably assure the safety of the community. Furthermore, in the weeks since the detention hearing, public safety concerns surrounding the corona virus pandemic have intensified and affected the policies and function of this Court and the Alexandria Adult Detention Center.

## ARGUMENT

### I. Standard of Review

Pursuant to 18 U.S.C. § 3145(b), this Court has the authority to revoke a detention order issued by a magistrate judge upon motion by the defense. This Court's review of the magistrate judge's detention order is *de novo*. *See United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir.

1989); *United States v. Burgess*, 2:17-CR-153, 2017 WL 6542939, at *1 (E.D. Va. Dec. 19, 2017). The district court must make its own *de novo* determination of the facts with no deference to the findings or legal conclusions of the magistrate judge. *United States v. Koenig*, 912 F.2d 1190, 119293 (9th Cir. 1990); *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).

## II.  The Bail Reform Act Favors Mr. Denton's Release.

The burden of proof in a bond proceeding is on the government. As the Supreme Court has emphasized, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, the Bail Reform Act requires that a person charged with an offense be released on personal recognizance or upon execution of an unsecured bond unless further conditions are necessary to reasonably assure attendance at trial and the safety of the community. See 18 U.S.C. §§ 3142(a) & (b). "The . . . drafters aimed toward a narrowly-drafted statute . . . addressed to the danger from 'a small but identifiable group of particularly dangerous defendants.'" *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986). "[A]ll doubts regarding the propriety of release [must be resolved] in the defendant's favor." *United States v. Sanchez-Martinez*, No. 13-CR-236, 2013 WL 3662871, at *5 (D. Colo. July 12, 2013). The Act permits pretrial detention only if no condition or combination of conditions exists that would provide that reasonable assurance. 18 U.S.C. § 3142(e). The sole exception to the law's strong preference for release is the list of so-called "presumption" offenses, where the burden is on the defense to rebut the need for detention. *Id.* This is not a § 3142(e) "presumption" case, and thus the BRA strongly favors release unless the government carries it burden to prove otherwise. *See, e.g., United States v. Giordano*, 370 F. Supp. 2d 1256, 1261 (S.D. Fla. 2005) (BRA favors release).

The court may not detain an individual unless the government proves by clear and convincing evidence that no combination of conditions can reasonably assure the safety of the community; or proves by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future proceedings.  18 U.S.C. §3142(f); *United States v. Stewart*, 19 F. App'x 46, 48-49 (4th Cir. 2001); *United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988).  The Bail Reform Act contemplates only that a court be able to "reasonably assure," rather than guarantee, the safety of the community. *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008). In determining whether any combination of conditions is sufficient to assure the objectives of pretrial release, the court cannot read § 3142 to require a guarantee against flight or danger. *See United States v. Portes*, 786 F.2d 758, 764 n.7 (7th Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887 (8th Cir. 1985).  If the plan for pretrial release conditions offered by a defendant is reasonable, and provides a means of monitoring his compliance with the terms and conditions of pretrial release, then the defendant should not be detained. *See United States v. Walters*, 89 F. Supp. 2d 1217, 1222 (D. Kan. 2000).

Mr. Denton is 26 years old and has no prior criminal history.  The offense conduct alleged in the affidavit was facilitated using electronic devices and the internet.  Although the nature of the offense conduct is serious in nature, the vast majority of the 134 calls identified in the affidavit were conducted by two individuals, Co-Conspirator 1 and 2. (Affidavit at ¶21)  The affidavit indicates that Mr. Denton admitted making some of the swatting calls (Affidavit at ¶25) and chose at least two of the targets to swat, the last of which occurred over a year ago (Affidavit at ¶24).  It is noteworthy that even though there was potential for serious injury as a result of these calls, nobody was physically injured.  The safety of the community would be reasonably

assured if Mr. Denton is placed on 24-hour home confinement with electronic monitoring, has a third-party custodian, and prohibited from access to electronic devices with internet capabilities.

Mr. Denton has resided in Montgomery County, Texas, for his entire life. He has significant family and community ties to this part of Texas, which is approximately 50 miles outside of Houston. With the brief exception of attending college elsewhere in Texas, Mr. Denton has never lived or worked outside of Montgomery County. Mr. Denton attended elementary, intermediate, and graduated from high school in Montgomery County. Both of his parents live and work Montgomery County where his father is a vice president of a local bank and his mother is a teacher in the local school district. The entire Denton family lives in Montgomery County including his brother, aunt, and cousins.

Mr. Denton's grandfather, Frank Denton, also lives in Montgomery County in the city of Conroe. Frank Denton is an ideal third-party custodian because he is retired, in good health, and able to monitor Mr. Denton continuously. In fact, his entire family is available to assist with supervising and supporting Mr. Denton upon his release. Frank Denton and his wife have lived in Montgomery County for 45 years. In addition to operating businesses in Montgomery County, Frank Denton served on the Texas Medical Board and was appointed by Governor Rick Perry to serve on the Texas Department of License and Regulation in 2002 where he served as the chairman for 10 years. He also served in leadership positions for numerous local organizations. As described above, Frank Denton executed an affidavit affirming that he is able to ensure Mr. Denton's compliance with all conditions of release and ensure his appearance.

Additionally, Mr. Denton worked for the same business for 5 years prior to his arrest and detention. Mr. Denton's employer is located five miles from his grandfather's house. As described above, his employer also executed an affidavit affirming that he is familiar with the

allegations, will continue to employ him, and will ensure that he complies with all conditions of release. His employer also indicated that Mr. Denton's work does not require the use of electronic devices.

Finally, the country is the midst of a public health crisis with the rapid spread of COVID-19. Public health officials are urging people to "socially distance" themselves from others and routinely disinfect surfaces which is nearly impossible to accomplish while incarcerated.[1] Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[2] According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[3] Inmates cycle in and out of BOP pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in federal pretrial detention centers.[4]

Amid this crisis, the Alexandria Adult Detention Center adopted policies designed to limit the transmission of the virus which impact counsel's ability to meet with Mr. Denton and

---

[1] Danielle Ivory, *'We Are Not a Hospital': A Prison Braces for the Coronavirus*, The New York Times (March 18, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisonsjails.html

[2] Joseph A. Bick (2007). Infection Control in Jails and Prisons. Clinical Infectious Diseases 45(8):1047-1055, at https://doi.org/10.1086/521910.

[3] Greg S. Gonsalves et al., *Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States*, (March 2, 2020), https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf

[4] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, at https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

review discovery produced by the government. Effective March 23, 2020, all attorney client meetings will be conducted by video conferencing limited to 30-minute time slots. This Court also took steps to limit the spread of the virus which impact Mr. Denton's Speedy Trial rights through the exclusion of 15 days from the time period for filing an indictment upon motion by the government. However, this Court's policies are changing on an almost daily basis often to the increasing detriment of incarcerated defendants.

    Accordingly, the defense respectfully requests that this Court revoke the detention order issued in this case. The defense additionally requests a hearing on this issue at the earliest date convenient for the Court.

Respectfully submitted,
John Cameron Denton


By: /s/ *Andrew M. Stewart*     .
ANDREW M. STEWART, ESQ.
Virginia State Bar No. 68683
Attorney for the Defendant
2007 15th Street North, Suite 201
Arlington, VA 22201
Phone: 703-248-0626
Fax: 703-248-8971
andrew.m.stewart.esq@gmail.com

CERTIFICATE OF SERVICE

       I hereby certify that on the 25th day of March, 2020, I electronically filed the foregoing motion with the clerk of the court using the CM/ECF system, which will send an electronic copy to the following:

Carina Cuellar
Assistant United States Attorney
U.S. Attorney's Office, Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

    By:  /s/ *Andrew M. Stewart*         .
ANDREW M. STEWART, ESQ.
Virginia State Bar No. 68683
Attorney for the Defendant
2007 15th Street North, Suite 201
Arlington, VA 22201
Phone: 703-248-0626
Fax: 703-248-8971
andrew.m.stewart.esq@gmail.com